UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE

2005 MAY 28  A 10: 29

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 03-10077-PBS |
| ) | |
| DARNELL MOORE, ) | |
| ) | |
| Defendant ) | |

## MOTION TO EXCLUDE IMPERMISSIBLY SUGGESTIVE IDENTIFICATION PROCEDURE AND TO PREVENT IN COURT IDENTIFICATION

Defendant, Darnell Moore, through the undersigned counsel, hereby moves to exclude evidence of an out-of-court "show up" identification because it was unnecessarily suggestive and unreliable. In addition, the court is asked to rule that there should be no in-court identification at trial because any such identification will inevitably be tainted by the preceding show up.

### FACTUAL BACKGROUND

Darnell Moore is charged with a single count of bank robbery, in violation of 18 U.S.C. 2113(a). The indictment alleges that in the morning of October 2, 2003, Moore entered the North Easton Savings Bank and demanded money from the teller, Marcia Desmarais. The robber showed her a note demanding money and she complied.

Ms. Desmarais described the man who approached her as a black male wearing a white long-sleeved tee shirt, red and blue baseball cap and sunglasses. Ms. Desmarais estimated that the robber was 5 feet 9 inches tall and weighed approximately 160 lbs.

The other person working in the bank that morning was a Michelle Wood. The robber demanded, and received, money from her drawer too. Ms. Wood observed the

robber leave the bank and walk into some bushes at the edge of the bank's parking lot.
When she last saw the robber he was heading in the direction of the McDonald's parking
lot next door. Ms. Wood did not describe the robber to the police.

Ms. Wood then saw a white Dodge Intrepid leave the McDonald's parking lot at
high speed. An unidentified bank teller made a 911 call and, according to the Incident
Report, described the robber as "B/M [black male] wearing long-sleeved T-shirt, red/blue
baseball cap, sunglasses."

Officer Ataman was in the area in a marked police cruiser, spotted and pursued
the car. According to her report, she described a "light-skinned black female" driving the
car and a "black male ducked down in the back seat." After a brief pursuit the car pulled
over, the driver, a Migdali Rivera, exited the vehicle and was arrested by Ataman.
Meanwhile, the officer observed the rear seat passenger get into the driver's seat and
drive away at high speed. Ataman left Rivera at the roadside, informed dispatch and
drove off after the Dodge.

Ataman lost sight of the car. However, on clearing the top of a hill entering
Brockton, she again spotted the Dodge which appeared to have been in an accident and
was stationary. According to the police report, the officer saw the driver running away
from the accident. She chased the man on foot and arrested him.

Officer Ataman transported the defendant to Easton police station, where she was
advised to return to the bank to secure an identification of the suspect. The officer did so
and described the identification in a single line of her report: "The suspect was positively
identified by two bank tellers as the armed robbery suspect." According to the report by
Officer Fox, Officer Domeniucci assisted Officer Ataman, although Domeniucci wrote

no report.

Further disclosure by the government pursuant to Local Rule 116.1 adds the following details about the identification procedure: it took place between 15 and 30 minutes after the robbery; the defendant was taken out of the police cruiser and displayed to both bank tellers through the window of the bank, nothing obscured their view of the defendant at a distance of 25 to 30 feet; a police officer asked the witnesses if they recognized the defendant, both witnesses immediately said they recognized him as the robber. The man identified was Darnell Moore.

## APPLICABLE LAW

"Due process of law, which requires fundamental fairness, protects against the admission of evidence deriving from identification procedures which are unnecessarily suggestive and conducive to irreparable mistaken identification." Stovall v. Denno, 388 U.S. 293, 302 (1967) (*internal citations omitted*).

In delineating the scope of this due process protection, the Supreme Court has applied a two-part test in determining when the admission of identification evidence would deprive the defendant due process of law. *See* Neil v. Biggers, 409 U.S. 188, 196 – 201 (1972) (dealing with the requirements of due process under the fifth amendment); *see also* Manson v. Braithwaite, 432 U.S. 98 (1977) (applying the jurisprudence of Neil to the states under the fourteenth amendment).

The first step requires a court to determine whether the identification procedure was unnecessarily suggestive. If the answer is "no" the court need go no further. If the answer is "yes", the court must take the second step and determine whether, notwithstanding its flaws, the identification is reliable.

In Neil, the Supreme Court, described this second step as "the central question, whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive." *Id*. at 199. The court stated that, "the factors to be considered in evaluating the likelihood of misidentification *include* [but are not limited to] the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id*. at 199 - 200 (*emphasis added*). *See also* United States v. Drougas, 748 F.2d. 8, 27 (1st Cir. 1984) (in which, applying the Neil factors, the identification was held reliable notwithstanding the suggestive identification procedure).

If, on weighing these factors, there is a "very substantial likelihood of misidentification", the evidence ought not to be admitted. Neil 409 U.S. at 198. This is because "[r]eliability is the linchpin in determining the admissibility of identification testimony." Manson 432 U.S. at 115.

This is a case in which the identification procedure was unnecessarily suggestive and in the light of the Neil factors creates a "very substantial likelihood of misidentification."

## ARGUMENT

In the two step approach mandated by the Supreme Court in Neil, one must first ask whether the procedure was unnecessarily suggestive. (Step One)  If so, the court may permit the identification into evidence only if it is sufficiently reliable, in the totality of the circumstances, with regard to the five factors cited in Neil. (Step Two)

4

I.    **Step One: The identification of Darnell Moore was unnecessarily suggestive.**

"The practice of showing suspects singly to persons for the purpose of

identification, and not as part of a lineup, has been widely condemned." Stovall 388

U.S. at 302. Yet, the admission of such evidence does not necessarily violate due process

as the Supreme Court in Stovall found, emphasizing that, on the facts of the case, "an

immediate hospital confrontation [with a moribund witness] was imperative." *Id.*

Show ups may not violate due process per se, but in this case there is an

additional factor: it is apparent that the identification by the two bank tellers took place

*simultaneously.* The risk that each witness relies on, or is influenced by, the other is

obvious:

> "There is one aspect of the identification in this case which gives us
> concern. It appears probable from the record that at least to some extent that the
> two victims were together when they identified the appellant as the assailant. If it
> is feasible for each witness, victim or otherwise to stand alone when asked to
> make the identification, aye or nay, this is the course that should be followed.
> While the benefit of a prompt on-the-scene confrontation makes acceptable the
> necessary suggestiveness of presentation of a single subject (a 'showup'), there is
> *ordinarily no need for the additional element of suggestiveness of identification
> made at the same time by two or more witnesses in each other's company.*"
> United States v. Wilson, 435 F.2d 403, 405 (D.C. Cir. 1970) (emphasis added)

This prejudice could have been avoided by the simple precaution of separating the

witnesses and inviting them to make independent identifications.

Finally, at this stage of the analysis, it should be noted that,

> "while the use of a less reliable procedure where a more reliable one may
> be available is not fatal to the government's efforts to elicit a later in-court
> identification, I think it is implicit in Neil and in Stovall v. Denno, that the
> necessity of the procedure is a factor to be considered in the reviewing the totality
> of the circumstances." United States v. Jewett, 502 F.2d 581, (1st Cir. 1985)
> (*Internal citations omitted*).

A showup may be suggestive, but it need not be unnecessarily suggestive:

"Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." Neil 409 U.S. at 382.

This is not a case where a hasty identification was needed to avoid detaining a suspect longer than necessary, because, on one view, there was evidence at the time of the identification sufficient to detain the defendant pending a line up or use of a photo array. Hence, the very use of a showup was gratuitous because it need not have been used at all.

Furthermore, it is highly likely that the defendant was displayed in handcuffs due to the violent nature of the allegation and the fact that the initial police report noted a "weapon shown."[1] If this is so, it would further add to the suggestiveness of the show up by implying, to the uncritical eye, that the man on display was violent.

The showup method was unnecessary and its inherent suggestiveness was aggravated by sloppy police work. Defendant most strongly urges the court to find that the lackadaisical conduct of the identification procedure was *unnecessarily* suggestive and therefore excludable on due process grounds, unless the totality of the circumstances show it to be reliable anyway.

**II.    Step Two: The identification of Darnell Moore lacks the indicia of reliability.**

To paraphrase the Neil's "central question:" where the identification procedure is suggestive, the court must be satisfied, by reference to the totality of the circumstances, that the identification is reliable. Neil established five "standard" factors which are to be considered in weighing the circumstances as a whole:

(i)    "The opportunity of the witness to view the criminal at the time of the crime:" In

---

[1] The incident report reads "First report weapon show, next report no weapon shown."

6

this case the opportunity was brief by the nature of the encounter.  Furthermore, one witness, at least, (Ms. Desmarais) had been shown a note which read, "give me 100's, 50's and 20's, if you give me dye packs or 10's I'll begin to shoot," so it is likely that her observation was made under significant stress;

(ii)     "The witness' degree of attention:" There is no information on this point and, with respect, the court should hear evidence upon this issue;

(iii)    "The accuracy of the witness' prior description of the criminal:" Ms. Desmarais' description of the defendant comprised five elements: a (a) black (b) male (c) wearing a white long-sleeved tee shirt, red and blue baseball cap and sunglasses, (d) 5 feet 9 inches tall (e) and approximately 160 lbs. There is no description by Ms. Woods.

At the time Moore was displayed to the witnesses he was wearing grey sweat pants and an orange fishnet tank top.[2] Therefore, he cannot have been recognized by his clothing. (Element c) The custody report describes Moore as 5 feet 11 inches tall and 200 lbs in weight whereas the bank teller says the robber was only 5 feet 9 and 160 lbs. The discrepancy in both height and weight is remarkable.  (Elements d and e)  Therefore the only elements of Ms. Desmarais' original description which are consistent with Moore's appearance are (a) and (b): both the robber and Moore are "black" and "male;"

(iv)    "The level of certainty demonstrated by the witness at the confrontation:" There is no information on this point and, with respect, the court should hear evidence upon this issue;

(v)     "The length of time between the crime and the confrontation:" The procedure took place between 15 and 30 minutes after the robbery.

---

[2]  Officer Fox described the defendants' clothing in his report.

In summary, both witnesses viewed the robber for a brief period under stressful circumstances while he was wearing a cap and sunglasses which obscured his features. Only one witness described the robber to the police and that description was significantly different to the defendant's appearance, in fact the only similarities are that both the robber and the defendant are black men. Imprudently, the defendant was brought back to the scene of the crime (when there was no need to rush the identification) and he was then shown to both witnesses at the same time, further jeopardizing the reliability of the identification.

In addition to these <u>Neil</u> factors, Defendant asks the court to consider that there are apparently no handwritten notes of these proceedings and the witnesses have made no statements of their own, indicating a lack of contemporary corroboration. The court has no information about what was said to or by the witnesses. Moreover, it is unclear whether this was a cross-racial identification which is widely-recognized as less accurate than same-race identifications. In short, the information which has been disclosed indicates that this was an unreliable identification.

### III.    The defendant requests a pre-trial evidentiary hearing.

As at the date of this motion, the prosecution, the defense and, most importantly the court is uninformed of what was said by the police or by the witnesses. The showup may have been conducted with the judicious propriety, or it may equally have been a total sham. The court should hear from Misses Desmarais and Wood, as well as Officers Ataman, Domeniucci and Fox. What questions did Officer Ataman ask? Did both witnesses respond? What were those responses? These questions must be answered before the jury is allowed to hear this evidence.

8

The court will become aware from the police reports that, on the government's view, there is other circumstantial evidence to suggest that Moore is the robber. That evidence does not affect the <u>Neil</u> analysis. To treat that material otherwise would undermine the integrity of the trial and compound an injustice. Indeed in <u>Manson v. Braithwaite</u> 432 U.S. 98,109 (1977) Mr. Justice Blackmun, writing for the Supreme Court, observed that such other incriminating evidence "plays no part in our analysis." *Id.* at 118. Mr Justice Stevens also addressed the issue in his concurring opinion:

"[I]n evaluating the admissibility of particular identification testimony it is sometimes difficult to put other evidence of guilt entirely to one side. Mr. Justice Blackmun's opinion for the Court carefully avoids this pitfall and correctly relies only on appropriate indicia of the reliability of the identification itself." *Id.* at 117 – 118.

## IV.    No in court identification should be allowed.

It follows that, should the court grant this motion, there should be no in-court identification of the defendant at trial: "in-court identification testimony is admissible *unless* its basis, the pretrial identification, has proven so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." <u>Neil</u> 409 U.S. at 198. Or to state the proposition in the affirmative: where an out-of-court identification is excluded as unreliable, no in-court identification is permissible.

## CONCLUSION

"Where an identification procedure is suggestive, reliability is the linchpin for determining admissibility." <u>Manson</u> 423 U.S. at114. The government has made discovery available on an "open file" basis in this case and despite the full availability of all material, the assembled record of the identification procedure indicates an ill-chosen

method of identification, conducted badly, in circumstances which make it unreliable. Individually these defects may not be sufficient to warrant exclusion of the evidence, but the conflux of such numerous and serious failings creates a "very substantial likelihood of misidentification." Neil 409 U.S. 198.

In the light of the foregoing, the evidence should be excluded. Should the court determine that the reliability factors must be further examined, defendant requests an evidentiary hearing prior to trial.

Respectfully submitted,

Dated: May 27, 2004

Robert M. Thomas, Jr. (BBO #645600)
Royston H. Delaney (BBO #655666)
*THOMAS & ASSOCIATES*
Federal Reserve Building
600 Atlantic Avenue, 12th Floor
Boston, MA 02210
(617) 371-1072

10

CERTIFICATE OF SERVICE

I, Royston H. Delaney, hereby certify that on May 27, 2004 a true and correct copy of this Motion to Exclude Impermissibly Suggestive Identification Procedure and to Prevent In Court Identification was served by U.S. Mail upon John Capin, Esq. Attorney for the United States.

Royston H. Delaney