UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 03-10388-JLT |
| ) | |
| DARNELL MOORE, ) | |
| ) | |
| Defendant ) | |

## GOVERNMENT'S OPPOSITION TO MOTION
## TO SUPPRESS IDENTIFICATION TESTIMONY

The United States of America opposes the defendant's "Motion to Exclude Impermissibly Suggestive Identification Procedure and to Prevent In Court Identification" ("the defendant's motion") because the motion is without basis in fact or law. The show-up identification the defendant challenges was not impermissibly suggestive. Moreover, even if the identification procedure were impermissibly suggestive, the identification itself was nonetheless reliable.

## I. FACTS

The government intends to present testimony at a hearing on the defendant's motion. In summary fashion, that testimony will establish the following:

On October 2, 2002, at approximately 10:00 a.m., a man robbed the North Easton Savings Bank, 669 Washington Street, South Easton, Massachusetts. He did so by handing a teller a note that, according to the teller's memory, stated "give me 100s, 50s and 20s, if you give me dye packs or 10s I'll begin to shoot." A teller described the robber as a black man, approximately 5'9" tall, weighing approximately 160 pounds, and wearing a long-sleeved white t-shirt, a red and blue baseball cap, and sunglasses.

Within minutes of the robbery, police officers stopped a car in which the defendant, Darnell Moore, was a passenger. Moore fled and the police gave chase. The chase culminated in Moore's arrest, which he resisted. Inside the car occupied by Moore just before his arrest, the police found a long-sleeved white t-shirt, a red and blue baseball cap, and two pair of sunglasses, as well as, among other things, a firearm and a note reading "<u>100's</u> - <u>50's</u> - <u>20's</u> <u>ONLY, IF YOU GIVE ME 10's OR DYE PACKS I WILL KNOW, AND WILL BEGAN</u> [sic] <u>TO</u> <u>SHOOT</u>.". After the defendant's arrest, the police transported him to the bank in a police cruiser to effect a show-up identification. Approximately 15 to 30 minutes elapsed between the robbery and the show-up. The police took the defendant out of the cruiser and two bank employees observed him through the window of the bank from a distance of approximately 20 to 30 feet. There was nothing obstructing the witnesses' view of the defendant. As the witnesses observed the defendant, a police officer asked the witnesses whether they recognized the defendant. Both witnesses immediately said they recognized him as the robber.

## II. <u>ARGUMENT</u>

### A.   <u>The Challenged Identification Should Not Be Suppressed</u>

Identification evidence should not be withheld from a jury unless the trial court is persuaded "that there was a very substantial likelihood of irreparable misidentification." <u>United States v. Watson</u>, 76 F.3d 4, 6 (1st Cir. 1996)(quoting <u>United States v. de Jesus-Rios</u>, 990 F.2d 672, 677 (1st Cir. 1993)). Such an exclusion is warranted only in "extraordinary cases." <u>United States v. Maguire</u>, 918 F.2d 254, 264 (1st Cir. 1990); <u>De Jesus-Rios</u>, 990 F.2d at 677. To determine whether a challenged identification falls into this rare category, a pronged-two analysis is required. <u>De Jesus-Rios</u>, 990 F.2d at 677. First, the Court must determine whether the procedure was impermissibly suggestive. <u>Id</u>. If the Court finds it was,

the Court must then decide whether the identification itself was reliable under the totality of the circumstances, notwithstanding the suggestive procedure. Id. The Supreme Court and First Circuit have articulated a five-factor test for reliability: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Id. at 677; see also Manson v. Brathwaite, 432 U.S. 98, 114-16 (1977); Neil v. Biggers, 409 U.S. 188, 199-200 (1972).

Under the totality of the circumstances test, the First Circuit has found show-up identifications to be reliable even where the witness failed to provide a description of the suspect at all. See United States v. Watson, 76 F.3d 4, 7, n.1 (1st Cir. 1996)(noting that absence of prior description by witness does not necessarily render subsequent identification suspect and finding no error in district court's finding that identification was reliable under five-factor test where a witness failed to provide prior description of an assailant but had ample opportunity to focus on suspect and identified him within minutes of the assault); see also Allen v. Commonwealth, 926 F.2d 74, 81 (1st Cir. 1991)(show-up identification found to be reliable even where a witness' prior description appears to have been limited to describing suspect as a black man).

Show-ups that take place immediately after the offense has been committed may be necessary in order to avoid the mistaken apprehension of the wrong person. See, e.g., United States v. Bautista, 23 F.3d 726, 730 (2d Cir.) ("where an officer has or should have doubts whether a detained suspect is in fact the person sought, the officer must make immediate reasonable efforts to confirm the suspect's identity"; internal quotations omitted); Johnson v. Dugger, 817 F.2d 726, 729 (11th Cir.1987); United

States v. Bagley, 772 F.2d 482, 492-93 (9th Cir.1985) (one-on-one show-up at bank shortly after commission of bank robbery held to be a "legitimate" procedure) Frank v. Blackburn, 605 F.2d 910, 912- 13 (5th Cir.1979) (procedure of taking suspect apprehended less than thirty minutes after robbery seven blocks from robbery to the scene of the crime not unnecessarily suggestive without words or actions by police to aggravate suggestiveness), modified on other grounds, 646 F.2d 902 (1981). Indeed, courts have noted that temporal proximity, and particularly whether the show-up occurred within an hour of the crime, is especially relevant to assessing the reliability of an identification. See Velez v. Schmer, 724 F.2d 249, 252 (1st Cir. 1984) and cases cited.

### 1. The Show-Up In This Case Was Not Impermissibly Suggestive.

In United States v. Bagley, the court found that a show-up conducted "[w]ithin an hour and a half of the robbery . . . [with the defendant] seated in a police car, handcuffed and surrounded by law enforcement officials" was suggestive but not impermissibly so. 772 F.2d at 492-93. The court emphasized that, as in this case, there was nothing to suggest any verbal encouragement by the officers to identify the defendant as the robber. Id. Similarly, in United States v. Bautista, the show-up was conducted while all suspects were handcuffed and illuminated by police flashlights was not unnecessarily suggestive. 23 F.3d at 730. The court explained that "handcuffs, custody, and flashlights were all necessary incidents of an on-the scene identification immediately following a night-time narcotics raid." Id. The court further noted that these incidents of the identification were "necessary to allow the officers to release the innocent." Id.

Likewise, in this case, the witnesses each viewed Moore in handcuffs, which were a necessary incident of the arrest of Moore, who officers had reason to believe had committed an armed bank-

4

robber and who had resisted arrest. The officers said nothing to the witnesses to suggest Moore was the bank robber. Thus, the Bagley and Bautista are instructive.

### 2. Moreover, The Show-Up Identifications Was Reliable.

Application of each of the reliability factors weighs heavily against suppression of the identification evidence here:

(1) Opportunity to view. Considerations relevant to this factor include the proximity of the witness to the suspect during the robbery, United States v. Guzman-Rivera, 990 F.2d 681, 683 (1st Cir. 1993), lighting conditions, Velez v. Schmer, 724 F.2d at 251, whether the witness saw the suspect's clothing or characteristics, Willis v. Garrison, 624 F.2d 491, 494 (4th Cir. 1980), whether the witnesses view was obstructed in any way was Brodnicki v. City of Omaha, 75 F.3d 1261, 1267 (8th Cir. 1996), and the amount of time the witness viewed the suspect. United States v. Zolicoffer, 92 F. 3d 512, 516 (7th Cir. 1996). Here, the tellers viewed the robber at close range, without obstruction, in a well-lighted bank. One of the witness tellers described the robber's sex, race, height, weight, and clothing in a manner that reflects their opportunity to observe him clearly.

(2) Degree of Attention. In this case, the witnesses all appear to have paid close attention to the robber. They were able to give a description of the incident to the police that included the robber's race, height, weight and clothing. Moreover, the nature of the crime suggests that the attention of the witnesses and, in particular, that of the victim tellers, was focused on the robber. The man stood immediately in front of them and demanded money, which the tellers handed to him.

(3) Accuracy of prior description. The description the witnesses provided to police of the suspect's race, height, and clothing were, taken as a whole, remarkably consistent with Moore's appearance.

See Manson v. Brathwaite, 432 U.S. 98, 115 (1977)(noting that witness's description of a suspect's clothing contributed to finding that description was accurate); Flaherty v. Vinzant, 386 F. Supp. 1170, 1174 (D. Mass. 1974)(noting that witness accurately described suspect's clothing and that "identification did not have to be made solely on the basis of height, weight, and the upper half" of a suspect's face); see Allen v. Commonwealth, 926 F.2d 74, 81 (1st Cir. 1991)(show-up identification found to be reliable even where a witness' prior description appears to have been limited to describing suspect as a black man).

Here, the description provided by the teller described the robber's race and height in a manner consistent with a description of Moore. She described the robber as a 6' 9" tall and black; Moore is 6' 11" tall and black. The discrepancy between the teller's estimate of the robber's weight (160 lbs.) and Moore's actual weight (190 lbs.) is not significant. Assessment of another person's weight is inherently more difficult that assessment of his height. This is so because height can more easily be estimated based on whether the subject is taller or shorter than the viewer.

More remarkable in this case is that the teller described the robber as wearing a long-sleeved white t-shirt, a red and blue baseball cap, and sunglasses, each of which was recovered in the getaway car. The defendant asserts (defendant's motion at 7) that the teller could not have recognized Moore's clothing because at the time of the showup he was wearing grey pants and an orange shirt. This misses the point. In assessing the reliability of the teller's description, the Court should consider the totality of the circumstances, which includes the fact that Moore was arrested in possession of sunglasses and the precise garments described by the teller.

(4) Certainty of the witness. Each of the witnesses identified Moore without hesitation and each will

testify they were certain Moore was the robber. Neither expressed any doubt.

(5) <u>Length of time after incident</u>. Court have recognized that this factor is especially relevant where the identification was made within an hour of the crime. See <u>Velez v. Schmer</u>, 724 F.2d 249, 252 (1st Cir. 1984) and cases cited. In this case, the show-up was conducted fifteen to thirty minutes after the robbery. This extremely short period strongly supports a finding of reliability.

## CONCLUSION

For the reasons stated above, this Court should deny the defendant's motion.

Respectfully submitted,

DONALD K. STERN
United States Attorney

By:  *[signature]*

JOHN A. CAPIN
Assistant U.S. Attorney
(617) 748-3264

## CERTIFICATE OF SERVICE

I, John A. Capin, Assistant U.S. Attorney, do hereby certify that a true and accurate copy of the foregoing will be served upon counsel for the defendant by in-hand delivery on June 25, 2004.

*[signature]*

JOHN A. CAPIN